UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

JANITA ROSA,

              Defendant.

------------------------------------X

09 Cr. 591-04 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On March 4, 2010, Janita Rosa, a/k/a "J", ("Rosa" or "Defendant") pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 853. For the reasons set forth below, Rosa will be sentenced to 97 months' imprisonment to be followed by 5 years' supervised release. Rosa will also be required to pay a special assessment of $100 and forfeit the proceeds of her offense.

**Prior Proceedings**

On September 24, 2010, Information S3 09 Cr. 591 (RWS) was filed in the Southern District of New York. Count 1 charges

that from October 2008 up to and including August 2009, in the Southern District of New York and elsewhere, Rosa and others conspired to distribute and possess with intent to distribute a controlled substance within 1000 feet of a school and a playground, in violation of 21 U.S.C. §§ 841(a)(1) and 860, including one kilogram and more of heroin and five kilograms and more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A).

On March 4, 2010, Rosa appeared before the Honorable Naomi Reice Buchwald in the Southern District of New York and pleaded guilty to Count 1 without a plea agreement.

On March 24, 2011, the Court received a letter from Rosa, her counsel, and her family requesting that Court be lenient when imposing a sentence in light of Rosa's personal circumstances, family background, and efforts to improve herself.

Rosa's sentencing is currently scheduled for March 31, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed —

  (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B)  to afford adequate deterrence to criminal conduct;

  (C)  to protect the public from further crimes of the defendant; and

  (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for —

  (A)  the applicable category of offense committed by the applicable category of defendant as

>           set forth in the guidelines . . .;
>
>   (5) any pertinent policy statement . . . [issued
>       by the Sentencing Commission];
>
>   (6) the need to avoid unwarranted sentence
>       disparities among defendants with similar
>       records who have been found guilty of
>       similar conduct; and
>
>   (7) the need to provide restitution to any victims of
>       the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Rosa's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report. The following offense was investigated by

4

special agents employed by the Drug Enforcement Administration (DEA). The narrative below is a compilation of several documents filed in this case and information obtained from an interview of the case agent.

**Introduction**

From approximately October 2008 through June 2009, in the Bronx, New York, Waldemar Morales-Diaz, Waldemar Morales, Jose Rodriguez, Janita Rosa, Gilbert Torres-Torres, Richard Valentin-Hernandez, Julio Sanchez, Miguel Gonzalez and Charles Job Hernandez-Alba were part of a large conspiracy which trafficked cocaine, at least 200 grams of heroin and at least three guns.

**Seizure of Heroin**

In February 2009, the DEA was investigating a heroin drug-trafficking organization (DTO) that operated out of the Bronx and that was headed by another co-conspirator (CC-1), who supplied drugs to this drug-trafficking conspiracy. Richard Valentin-Hernandez, Jose Rodriguez, Gilbert Torres-Torres and

Janita Rosa were co-conspirators who assisted CC-1 in his drug trafficking activities.

On April 20, 2009, law enforcement agents established surveillance in the vicinity of 3135 Tiemann Avenue in the Bronx. Agents then observed a grey sedan park in front of that address with two individuals inside of the sedan (the "driver" and the "passenger").

Another law enforcement officer then observed a black Cadillac Escalade stop in the vicinity of Hammersley Avenue and Tiemann Avenue, and an individual, who was later identified as Jose Rodriguez, exited the Escalade. Rodriguez walked toward 3135 Tiemann Avenue and then met with the passenger from the grey sedan. Rodriguez and the passenger then both walked toward the front of 3135 Tiemann Avenue and out of the view of surveillance.

Shortly thereafter, the passenger returned to the grey sedan with a white paper bag. Once the passenger was back in the vehicle, the grey sedan drove south on Tiemann Avenue. In the vicinity of Kingsland Avenue and Gun Hill Road, law enforcement officers pulled over the grey sedan for traffic

infractions, and, upon a consensual search of the car, recovered approximately 50 grams of heroin inside of a white paper bag.

The passenger agreed to place a consensually monitored and recorded call to CC-1 on a cellular phone used by CC-1 (the "CC-1 cell phone"). During that call, the passenger told CC-1 that the car had been impounded. CC-1 then confirmed with the passenger that the "shit is in the car," and that law enforcement had not searched the car. CC-1 also asked the passenger where he had "stashed it."

A search of the passenger's cellular phone showed contact between the passenger, CC-1 and Jose Rodriguez in the days leading up to the arrest of the passenger, as well as unanswered calls from Rodriguez and CC-1 to the passenger after he was arrested. Inside of the phonebook of the passenger's cellular phone was the number of the CC-1 cell phone under the name "New WW," and another number (the "Rodriguez phone") under the name "WW Cuz." Based on toll records and other information, the Rodriguez phone had been in contact with the passenger's cellular phone in the days leading up to the passenger's arrest.

7

After the passenger was arrested, an individual using the Rodriguez phone and an individual using the CC-1 cell phone both attempted to call the passenger's phone at 6:21 p.m. and 6:54 p.m., respectively.

**Wiretaps**

Beginning in June 29, 2009, law enforcement officers began intercepting communications over the CC-1's cell phone pursuant to a court-authorized wiretap order.

During the course of the wiretap investigation, law enforcement officers intercepted calls between CC-1 and Richard Valentin-Hernandez, Jose Rodriguez, Gilbert Torres-Torres, Janita Rosa, Julio Sanchez, Miguel Gonzalez and other co-conspirators discussing, in coded language, the distribution of narcotics.

**Role of the Defendant**

Rosa was the girlfriend of Waldemar Morales-Diaz, the leader of the drug and gun trafficking conspiracy. Rosa is heard in wire-tapped conversations negotiating the logistics of

drug transfers. On one occasion, she received a quantity of cocaine and passed it to another co-conspirator. Rosa was arrested on August 6, 2009. She is being held accountable for five kilograms of cocaine and one kilogram of heroin.

A review of chronological records provided by U.S. Pretrial Services Officer Jason Lerman indicates that the defendant has mostly been in compliance with the terms of her bail conditions.

**The Relevant Statutory Provisions**

For Count 1, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846, the mandatory minimum term of imprisonment is 10 years.

If a sentence of imprisonment is imposed, the Court must impose a term of supervised release of not less than five years, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846.

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846.

9

The maximum fine that may be imposed is $4 million, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to 21 U.S.C. § 862(a)(1)(A), upon a first conviction for distribution of a controlled substance, a defendant may be declared ineligible for any or all Federal benefits for up to five years as determined by the Court.

**The Guidelines**

The November 1, 2009 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

The guideline for a violation of 21 U.S.C. § 846 is found in § 2D1.1. Since the offense involves a conspiracy to distribute and possess with intent to distribute at least 5 kilograms of cocaine (equivalent to 1,000 kilograms of

marihuana) and at least one kilogram of heroin (equivalent to 1,000 kilograms of marihuana), which has a combined marijuana equivalency of 2,000 kilograms, the base offense level is 32 pursuant to § 2D1.1(c)(4).

Based on her plea allocution, Defendant has shown recognition of her responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels. Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 29.

On January 17, 2001, Rosa was arrested and charged with Attempted Criminal Possession of a Controlled Substance in the Third Degree. On August 13, 2001, Rosa was sentenced in the New York State Supreme Court, New York County, to 12 months' imprisonment and a six-month license suspension. Pursuant to §§ 4A1.1(b) and 4A1.2(e)(2), this conviction warrants two criminal history points.

A total of two criminal history points establishes a Criminal History Category of II, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 29 and a Criminal History Category of II, the Guidelines range for imprisonment is 97 to 121 months.

The Guidelines range for a term of supervised release is five years, pursuant to § 5D1.2(b).

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offense is $15,000 to $4 million, pursuant to § 5E1.2(c)(1) and (c)(4). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of

$2,270.93 to be used for imprisonment, a monthly cost of $317.32 for supervision, and a monthly cost of $2,063.19 for community confinement.

As a result of committing the offenses in Count 1 of the Information, Defendant shall forfeit to the United States, pursuant to 18 U.S.C. §§ 1963(a)(1)-(3), all property, real and personal, involved in the offense or traceable to such property.

Pursuant to § 5F1.6, the Court may deny eligibility for certain Federal benefits of any individual convicted of distribution or possession of a controlled substance.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of

sentencing," <u>Kimbrough v. United States</u>, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For the instant offense, Rosa will be sentenced to 97 months' imprisonment and 5 years' supervised release.

Rosa is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence her term of supervised release. It is recommended that Rosa be supervised by the district of her residence.

As mandatory conditions of her supervised release, Rosa shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and

14

testing.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Defendant will participate in a program approved by the United States Probation Office which may include testing to determine whether Defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the probation officer. Defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for March 31, 2011.

It is so ordered.

**New York, NY**
**March 30, 2011**

_____
ROBERT W. SWEET
U.S.D.J.